HARRY HOLIDAY v. THE AMERICAN MUTUAL ACCIDENT ASSOCIATION OF OSHKOSH, WISCONSIN, Appellant.

**Accident Insurance:** CLASSIFICATION.  One insured as a bookkeeper, against accident, by a policy classifying as more hazardous the occupation of "hunter or hunting," and providing that if injury occurs "while performing any act pertaining to an occupation classed as more hazardous" than the one under which the policy is issued, "or while engaged in a more hazardous occupation," insured shall be entitled only to such indemnity as the premiums paid would purchase in the class in which such occupation is classed, is not prevented from recovering the indemnity provided for a bookkeeper, though shot by discharge of a gun he was carrying while hunting for recreation.

WAIVER OF DEFENSE. Defense, under provision in an accident policy against recovery for injuries resulting from exposure to unnecessary danger, is waived by offer to confess judgment for an amount less than claimed, on the ground that insured's occupation was more hazardous than that under which he was insured, and, by motion, after the evidence was in, for verdict in accordance with such offer.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

WEDNESDAY, OCTOBER 13, 1897.

THE plaintiff became a member of the defendant association on the first day of December, 1894. The association classifies its risks from "AA" to "G." Those classed as AA are preferred, and the loss of a foot above the ankle entitles the holder of such a certificate to two thousand dollars. Persons admitted to this class are bookkeepers, lawyers, clergymen, artists, etc. Class ½ AA is for the same persons, but the indemnity is but one-half of that of class AA. Class E includes "hunter or hunting," and indemnity for the loss of a foot above the ankle is five hundred and eighty-five dollars. On the sixth of August, 1895, the plaintiff was out hunting with a party; and on his return, in getting through a wire fence, by an accidental discharge of his gun, he was injured so as to necessitate the amputation of his left foot above the ankle joint. The indemnity provided in such a case, where payable, was in eighteen equal monthly installments. The association declined payment in this case, and after five months, this action was commenced, claiming two hundred and seventy-seven dollars and eighty-eight cents, as the five installments due; and later, by an amendment to the petition, the amount was raised to five hundred dollars, because of two more installments becoming due. Plaintiff's claim is based on the classification

½ A.A., being that specified in the certificate of member-
ship. Defendant, in its answer, admits a liability, and
offers to confess judgment for two hundred and ninety-
two dollars and fifty cents, being one-half the indemnity
provided for such a loss in Class E, in which class is
specified "hunter or hunting," but denies a liability, as
claimed under a classification ½ A.A. At the close of
the evidence, the defendant moved the court to direct a
verdict for it, based on three separate grounds, which
the court denied, and sustained a motion by the plain-
tiff for a verdict in his favor for five hundred dollars,
and from a judgment thereon the defendant appealed.—
*Affirmed.*

   *Dodge & Dodge* and *Phillip & Hicks* for appellant.

   *Kelley & Cooper* for appellee.

   GRANGER, J.—I.    It is first urged that the court
erred in directing a verdict for plaintiff, because there
was a question of fact whether the plaintiff, at the time
of the injury, was not engaged in a more hazardous occu-
pation than the one in which he was insured, being that
of a bookkeeper. It appears in the statement
that there was an offer to confess judgment for
two hundred and ninety-two dollars and fifty
cents; and in defendant's motion to direct a verdict, in
one division thereof, it asks the court to direct a verdict
for plaintiff for that amount "up to the time of the ten-
der, as set forth in defendant's answer." This condition
of the record fixes a right of recovery, leaving only the
question of amount, which is made to depend on the
classification under which a recovery can be had. The
following is a provision of the certificate:  "*Fourth.*
That the association shall have the power at any time
to cancel this certificate upon refunding any balance
of the premium standing to the credit of such member

on its books; and if injury occurs while performing an act pertaining to an occupation classed by it as more hazardous than the one under which this certificate is issued, or while engaged in a more hazardous occupation, such member or beneficiary shall be entitled to such an amount of indemnity as the premiums paid would purchase in the class in which such occupation is classified." It will be seen that a main contention arises over whether the plaintiff, when injured, was engaged in the occupation of a hunter or hunting, within the meaning of the contract, so as to change the classification under which he is entitled to indemnity from $\frac{1}{2}$ AA to E. The facts are not in dispute, and are substantially as follows: The plaintiff and others had been hunting, and plaintiff was carrying a hammerless gun, which cocked only by breaking it down to insert the shells containing the charge of powder and shot. There were no hammers to catch, as is many times the case, and discharge the gun. There was a safety catch, which, when "set at safety," prevented a discharge until pushed "to shoot." Plaintiff was coming to the wagon, which was in the highway, from a field; and, as there was no gate, he had to cross a wire fence. With his gun, as claimed by him, at "safety," he placed it across a wire of the fence, with one hand on the stock, and the other on the barrels, so as to press down a wire of the fence, and make an opening through which to pass. He passed his left foot through to the other side, and bent his body, and passed through; and as he was straightening up, after being through, he stumbled, because of a hole in the ground; and in some way the safety catch was changed, and the gun discharged, causing the injury. It should perhaps appear that there is doubt as to the condition of the safety catch on the gun. Every essential fact from which to reach a conclusion is in this statement. That, for the time being, the plaintiff

was engaged in a more hazardous work than that of a bookkeeper, admits of no quest'on, and the jury must have so found had the question been submitted. In fact, the court could have so stated to the jury. There is no other question of fact. Whether that fact has the effect of changing the clas ification is one of law, and we do not think there was a disputed question of fact in the case for the jury to determine.

II.   A more difficult question is how the fact affects the classification. We may fairly present the question in this way: Does the association intend, and should one accepting its propo ition for member-ship understand, that, if accepted under the classification AA, wherein the indemnity is larger because of the decreased risk, such indemnity is to be paid only if accident occurs while he is doing those things because of which he is admitted to such classifi-cation? As, if a minister, must the accident occur while doing the distinguishing duties of a minister; or, if a lawyer, while doing his professional work; or, if an artist, while doing the work of an artist,—with, per-haps, in each case, the essential duties of home, of society, and of citizenship? Or does the association intend, and should such a person understand, that the classification is based on the decreased risk because of the effect of such callings lessening the hazard, in view of the usual experiences of such men, not professionally, but as a whole? It seems to us that reason and author-ity sustain the latter rule.

An authority relied on by appellant is *Insurance Co. v. Martin*, 133 Ind. Sup. 376 (33 N. E. Rep. 105). In that case, the classification in which the assured was accepted was that of a passenger brakeman, and twenty dollars would purchase two thousand dollars in that class. The occupation of brakeman on a construction train was ten times more hazardous, and the assured,

after the insurance, changed his occupation to that of a brakeman on a construction train. The case holds that the recovery should be in the latter classification, and, we think, correctly so. In *Knapp v. Accident Association,* 53 Hun, 84 (6 N. Y. Supp. 57), where a policy issued to a person classed as a "retired gentleman," with a proviso against liability for injuries resulting from exposure not incident to the occupation under which he received membership, and he was injured while operating a buzz saw for amusement, it was held there could be no recovery. It was hardly to be contemplated, when the policy issued, that working with a buzz saw would be an amusement of a retired gentleman; but, on the contrary, it would be one of the resorts for amusement that would not be contemplated. The known danger of such a resort would suggest its exclusion. The case of *Aldrich v. Accident Association,* 149 Mass. 457 (21 N. E. Rep. 873), is where the certificate issued to a "spare conductor, through freight." The assured was killed while acting as brakeman on a through freight, under another as conductor. The risk of brakeman was classed as more hazardous than that of conductor. A recovery was only allowed under the more hazardous risk. It will be seen that in these cases, except the *Knapp Case* there was a change of occupation or employment, at least temporarily. The case of *Accident Association v. Frohard,* 134 Ill. 228 (25 N. E. Rep. 642), is quite similar to this. The assured was a teacher, and was killed while overlooking the construction of a building he was having erected. It was said in the case: "The word 'occupation' * * * must be held to have reference to the vocation, profession, trade, or calling which the assured is engaged in, for hire or profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the daily life of men in all occupations,

or from engaging in mere acts of exercise, diversion, or recreation." In *Insurance Co. v. Burroughs*, 69 Pa. St. 43, the business of the assured was that of an earthenware manufacturer, and he was killed while on a visit to his grandfather, and assisting in hauling in and unloading hay. Speaking of a change of occupation, it is said: "But this was not a change of his occupation or business, within the meaning of the policy. To give the word such a construction would prevent the assured from performing any act or service outside of his usual avocation or business without rendering the policy null and void." We do not overlook the particular language of the certificate that limits the liability where the accident "occurs while performing any act pertaining to an occupation classed by it as more hazardous than the one under which the certificate is issued." This language is more doubtful than that as to a change of occupation. With considerable study, we are not able to give the words quoted a meaning in connection with the facts of the case. As applied to this case, "occupation" must mean hunting. We think, within the meaning of the certificate, the plaintiff was not engaged in the occupation of hunting when the injury occurred, so that the liability of the defendant can be lessened for that cause. That he was hunting, there is no question; and, by all authority, there may be hunting without its being an occupation. The classification by which the hazard of hunting is fixed is that of hunting as an occupation. Now, the plaintiff was carrying a loaded gun, and getting through the fence. What was the act pertaining to the occupation of hunting? There could be nothing more than the fact that he was hunting; and if the mere fact of hunting for recreation is not such an occupation, within the meaning of the policy, how does it *pertain* to it,—that is, pertain to the occupation (which the authorities hold to mean, not hunting for amusement, but as a business or calling for profit or hire)? Such a

carrying of the gun no more pertained to the occupation of hunting than would the carrying of a gun from one place to another with no intention to hunt. The carrying of the gun would be an act to be done in hunting, and it might pertain to hunting, but not to it as an occupation. The entire classification of the defendant association is before us, and it seems to be entirely based on occupations; that is, occupations, and not acts, are the basis of classification. In *Accident Association v. Frohard, supra,* the policy contained the term "any act or occupation," and the case is quite in point on this question. After some consideration of this question, it is said: "There is not in the by-laws or in the record any classification of hazards in respect to acts; in other words, there is no act which is classified as more or less hazardous than another, and no act is classed as more hazardous than the occupation designated in the certificate of insurance issued to the deceased. The case, then, does not stand otherwise than it would if the word 'act' were not found in the contract." We do not see why this language is not applicable to this case.

III.   A provision of the policy prevents a recovery for injuries resulting from exposure to unnecessary danger. Such a defense goes to the entire right of recovery. In view of the offer to confess judgment for two hundred and ninety-two dollars and fifty cents, and of the motion made after the evidence was in, we do not see how this question is longer involved. The offer to confess and the motion are an acknowledgment of a right of recovery, so that the only question was as to the classification that should fix the amount. The fact of unnecessary exposure has no bearing on that question. The judgment is AFFIRMED.