[No. 12633.  Department Two.  September 13, 1915.]

## LENNA E. GREEN, *Respondent*, v. NATIONAL CASUALTY COMPANY, *Appellant*.[1]

INSURANCE — ACCIDENT INSURANCE — MORE DANGEROUS HAZARD— POLICY—CONSTRUCTION.  One insured in an accident policy as a "clerk in a drug store handling light goods at counter," who was shot on a vacation hunting trip while he was rowing a boat with companions shooting ducks, received his injury while doing or performing "temporarily or otherwise any act pertaining to any more dangerous hazard or exposure," within the meaning of a clause in the policy reducing in such case the amount to be paid, where the classification of hazards included that of "hunter, either professional or amateur" as more hazardous than that of drug clerk.

SAME—ACCIDENT INSURANCE—POLICY—INJURY—"FATAL OR OTHERWISE."  A provision in the application for an accident policy agreeing to accept a less sum in case "I am injured" while doing any act pertaining to a more dangerous hazard, includes an "injury" resulting in death, although in some of the clauses, after the word "injury" the words "fatal or otherwise" are used.

SAME—ACCIDENT INSURANCE—POLICY—MANUAL—EVIDENCE—IDENTIFICATION.  In an action upon an accident policy which was accepted subject to the company's manual of classification of hazards, the manual is properly admitted in evidence where the agent of the company who·wrote the policy identified the manual offered as the one used in the business, and in force and published at the date of the execution of the policy.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered October 1, 1914, upon findings in favor of the plaintiff, in an action on an accident insurance policy, tried to the court.  Modified.

*C. E. Ellis (Henry C. Walters*, of counsel), for appellant.
*E. B. Quackenbush*, for respondent.

MAIN, J.—The purpose of this action was to recover on an accident insurance policy the amount of indemnity claimed by the plaintiff to be due thereon.  The facts are as follows:

[1]Reported in 151 Pac. 509.

The policy which is the foundation of the action was issued to one Oliver J. Green, the then husband of the plaintiff, on the 21st day of February, 1911. This policy provides that the provisions and conditions on the back thereof are made a part of the contract. On the back of the policy appears the application therefor, signed by the insured. Paragraph 14 of this application is as follows:

"I understand and agree (a), that if I contract illness or am injured, fatally or otherwise, after having changed my occupation to one classified by this company in their manual as more hazardous than that herein stated, or if I am injured while doing or performing temporarily or otherwise any act pertaining to any more dangerous hazard or exposure or occupation, the company's liability shall be only for such proportion of the principal sum or other indemnity as the premium paid by me will purchase at the rate fixed by the company for such greater or more perilous hazard or exposure."

Paragraph 15 of the application provides that the insured shall accept the policy subject to its provisions, conditions, limitations and the "company's manual of classification of hazards." In this manual, under the classification of hazards, that of hunter, either professional or amateur, refers to table "X" therein. This table fixes the premium and indemnity for one engaged in the occupation of a hunter, either amateur or professional. The policy, together with the manual of the classification of hazards, automatically adjusts the amount of indemnity in accordance with what the insured was entitled to in the occupation in which he was engaged at the time of the injury. In other words, if the insured was injured while engaged in an occupation more hazardous than that in which he was engaged at the time the policy was issued, he would recover on the policy the amount of indemnity which the premium paid would purchase for the more hazardous occupation. At the time the policy was issued, the occupation of the insured was that of a "clerk in drug store handling light goods at counter."

After this policy was issued, the insured continued the occupation of a drug clerk, and paid the premium provided for in the policy. On the 28th day of September, 1913, Oliver J. Green, the insured, left Spokane, Washington, where he was residing, in company with E. E. Loffler and Floyd Loffler for the purpose of making a hunting trip in the northern part of the state. The persons named making up the hunting party took with them their guns and dogs. After leaving Spokane and before reaching the ranch of one Heater, near Locke, Washington, Green shot some birds. On September 30, 1913, Green and the two Lofflers went to the Pend Oreille river, near Locke, taking with them guns and dogs. After reaching the river, they got into a rowboat which Green rowed. While rowing across the river, one of the Lofflers shot a duck. After the duck was shot, one of the dogs jumped out of the boat, and in doing so caused one of the guns to go off. The discharge from this gun took effect in Green's body, and from the injuries received, he died soon after.

The plaintiff was the beneficiary named in the policy, and she claims the right to recover for the amount of indemnity which the premium paid would purchase for one engaged in the occupation of a drug clerk. The defendant claims that the accident which caused the death of the insured occurred while he was doing or performing an act pertaining to the more dangerous occupation of an amateur hunter. Under the plaintiff's theory, the amount of recovery would be $780, with accumulations and interest. Under the defendant's theory, the amount of recovery would be $130, with accumulations and interest. The trial court sustained the contention of the plaintiff and entered findings and a judgment accordingly. From this judgment, the defendant appeals.

The first question to be considered is whether, at the time the insured received the injury from which he died, he was doing or performing an act pertaining to the occupation of an amateur hunter. It is not claimed that his occupation

while he was on a vacation making this hunting trip had changed from that of a clerk to that of an amateur hunter, but it is claimed that, at the time of the injury, he was performing an act pertaining to the more dangerous hazard of a hunter. Under the facts stated, it is plain that the insured, at the time of his death, was hunting, and that he was engaged in hunting as a mere recreation. Something is said in the respondent's brief to the effect that, since he was rowing the boat at the time of the accident, he was not engaged in an act pertaining to hunting. But with this contention we cannot agree. The parties named were on a hunting trip. The fact that one of them happened to be rowing the boat and the other was doing the shooting, while they crossed the river, would not make one a hunter and the other not. They were engaged together in hunting as a mere recreation. It was a joint undertaking or enterprise, so to speak.

From the excerpt quoted from the application, which became a part of the contract, it appears that if the insured was injured while doing or performing "temporarily or otherwise any act pertaining to any more dangerous hazard or exposure," the liability under the policy would be only for such an amount of indemnity as the premium paid would purchase at the rate fixed for the more perilous hazard. The case of *Lane v. General Accident Ins. Co.* (Tex. Civ. App), 113 S. W. 324, presents facts strikingly similar to those in this case. In fact, the facts there are almost identical. In that case the insured, at the time the policy was issued, was engaged in the occupation of a sheep farmer, and while hunting was killed by the accidental discharge of a gun in the hands of another. On the back of the policy was a provision in almost the identical language as that which appears on the back of the policy in the present case. It was there held that, since the insured was killed while hunting for recreation, that the insurer was liable only for the amount of the indemnity provided for the occupation of a hunter. It was there said:

"Deceased had not changed his occupation when he was killed and was still engaged in sheep farming, but he was actually engaged in hunting deer when he was shot, and was undoubtedly doing an 'act or thing pertaining' to the occupation of hunting, which was classified as an occupation more hazardous than that of sheep farming."

Sustaining the principle of that case and closely analogous upon the facts are: *Montgomery v. Continental Casualty Co.*, 131 La. 475, 59 South. 907; *Loesch v. Union Casualty & Surety Co.*, 176 Mo. 654, 75 S. W. 621; *Thomas v. Masons' Fraternal Acc. Ass'n*, 64 App. Div. 22, 71 N. Y. Supp. 692. In the case of *Holiday v. American Mut. Acc. Ass'n*, 103 Iowa 178, 72 N. W. 448, 64 Am. St. 170, a diametrically opposite view is expressed upon the terms of an accident policy in language almost identical with that upon which the present action is based. In that case the insured was killed while hunting for recreation. It seems to us that the holding in the Iowa case practically reads out of the contract that clause which provided that if the insured while doing any act or thing pertaining to any occupation classified as a more dangerous hazard, the liability should only be for such sum as the premium paid would purchase for such a hazard. In the case now before us, we think it plain that the insured, at the time he was injured, was engaged in doing an act which pertained to a more dangerous hazard, that of hunting.

The next question is whether the clause in the application which provides that if "I am injured while doing or performing temporarily or otherwise any act pertaining to any more dangerous hazard or exposure," covers an injury which results in death. The respondent claims that the word injury in this clause only refers to those injuries which do not result in death. The appellant claims that the word includes all injuries, whether fatal or otherwise. The policy, in paragraph (a), covers loss for bodily injuries effected through "external, violent and accidental means." In paragraph (h), there is a limitation of liability. This paragraph covers a

number of matters. In some of the clauses therein, after the word "injury," the words "fatal or otherwise" are used. But in the clause of this paragraph which exempts from injuries caused while getting on or off, or attempting to get on or off, any moving car, only the word injury is used, and is not followed by the terms "fatal or otherwise." In paragraph 14 of the application, which is above quoted, it will be noted that in the first clause after the word "injury" the words "fatal or otherwise" appear. This clause covers a change of occupation. The clause which immediately follows is connected with the preceding by the disjunctive "or," and provides for an exemption or limitation where the insured is injured, not after having changed his occupation, but while doing or performing an act pertaining to a more dangerous occupation. If the word "injury" here includes only those injuries which do not result in death, then, by a like course of reasoning, the exemption in paragraph (h) from liability if the insured is injured while getting on or off a moving car would limit the liability if the insured was injured in such act and the injury did not produce death, but that if the injury produced death, then there would be no exemption or limitation because the insured sustained the injury while getting on or off a moving car. Considering all the terms of the policy, and giving effect to all the language used, we think the word "injury," as it appears in that clause of the application which applies to an act pertaining to a more dangerous hazard, includes an injury which produces death as well as one that falls short of such a result.

The Circuit Court of Appeals for the eighth circuit in *Standard Life & Acc. Ins. Co. v. McNulty*, 157 Fed. 224, had before it substantially the same question. In that case, in one sentence of the policy it was provided that, for injuries sustained while entering or leaving, or trying to enter or leave, any moving conveyance, there would be no liability under the policy. In the next sentence of the policy it was provided that if any injury, fatal or otherwise, was received

by or in consequence of having been under the influence, or affected by, or resulting directly or indirectly, wholly or partly from intoxicants, and various other causes, that there should be no liability. There the insured was injured while entering a moving car as a passenger. From this injury death resulted. The action was brought upon the policy. Speaking of the word "injuries," in the clause relating to entering or leaving a moving car, it was said:

"The contention was and is that all the terms of a contract should be given effect, and that the words 'fatal or otherwise' in the second sentence have no effect if the word 'injuries' in the preceding sentence includes injuries that are fatal as well as those that are not. The argument seems to be fallacious. The words 'fatal or otherwise' were not used to qualify or affect the injuries described in the former, but those specified in the latter sentence, in the sentence in which they were written only. They were inserted in this sentence to make it clear beyond question that all injuries, whether fatal or otherwise, resulting from intoxicants, and the other causes there specified were not covered by the insurance. They accomplish this purpose, and have their intended effect just as completely, whether the word 'injuries' in the preceding sentence is interpreted to include all injuries, or only those that are fatal, or those that are not fatal, only.

"It is obvious that there are two classes of injuries. Those that are fatal, and those that are not fatal. The word 'injuries' is a generic term, and it naturally includes injuries of both classes, because no one of either class is not an injury. Again the word is known by its associates and by the sense in which it is used in other parts of the same contract or in similar agreements. The first sentence of the policy reads that the company 'hereby insures the person whose name is entered upon the stub of this ticket . . . against loss of time resulting from bodily injuries . . .' "

After referring to other provisions of the policy upon this branch of the case, the opinion concludes:

"And under the rule *noscitur a sociis*, and by the natural and obvious signification of the word, the injuries sustained while trying to enter or leave any moving car seem to mean both those which prove fatal and those which do not."

Upon this question, in *American Accident Co. of Louisville v. Carson*, 99 Ky. 441, 36 S. W. 169, 59 Am. St. 473, 34 L. R. A. 301, the court of appeals of Kentucky takes the opposite view upon the provisions of a policy which are somewhat similar. Under the terms of the policy in the present case, it is reasonably obvious that the word "injury," as applied to the insured getting on or off a moving car, includes not only injuries which fall short of producing death, but also those resulting fatally, and that the word "injury" in that clause of the application which refers to the doing or performing of an act pertaining to any more dangerous hazard, includes not only non-fatal, but also fatal injuries. It was not the evident purpose of the policy to limit the liability for an injury which did not produce death, and yet not limit the liability if the injury did produce death. In thus construing the policy, we are not unmindful of the rule that policies of insurance are construed in favor of the insured and most strongly against the insurance companies. *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636. But this rule should not be permitted to have the effect to make a plain agreement ambiguous and then interpret it in favor of the insured. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain and ordinary meaning. *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452; *Standard Life & Acc. Ins. Co. v. McNulty, supra.*

The respondent contends that the manual of hazards was not properly admitted in evidence, because it was not shown that it had been adopted by competent authority. The agent who wrote the policy for the insured in this case testified that he was the agent of the company; that the manual for the classification of hazards was the manual used in the business; that it was in force at the date of the execution of the policy; that it was published at the time that he wrote the

policy, and that the manual of hazards referred to therein was the one introduced in evidence. As already stated, it appears in the application that the policy was accepted subject to the company's manual of classification of hazards. The testimony of the agent identified the manual introduced in evidence as the one referred to in the contract. The manual was properly introduced in evidence. The language of the general rule, as stated in 9 Cyc. 582, is that:

"Where one paper refers to another for its terms, it is the same as though the words of the one referred to were inserted in the former."

The cause will be remanded with direction to the superior court to modify the judgment in accordance with the views herein expressed.

MORRIS, C. J., FULLERTON, and ELLIS, JJ., concur.