[L. A. No. 6502. In Bank.—August 14, 1922.]

HATTIE L. OGILVIE, Respondent, v. AETNA LIFE IN-
SURANCE COMPANY, etc. (a Corporation), Ap-
pellant.

[1] ACCIDENT INSURANCE—CAUSE OF DEATH—EVIDENCE—REPORT OF
COUNTY AUTOPSY SURGEON.—Where in an action on a policy in-
suring plaintiff's husband against disability or death resulting
directly and independently of all other causes from bodily injuries
effected solely through external, violent and accidental means, the
defendant denied that the assured sustained any injury from acci-
dental means and alleged that his death was caused and was con-
tributed to by disease, it was error to receive in evidence, over
the objection of the defendant, the written report of the findings
made by the county autopsy surgeon to the coroner and filed
with the county clerk, since it was an unsworn statement, not sub-
ject to cross-examination, made by a stranger to the action, and
made in the course of a proceeding to which the defendant was
neither party nor privy.

[2] ID.—TESTIMONY OF SURGEON—ERROR NOT CURED.—In an action
on a policy insuring against death as the result of accidental
means, error in admitting over defendant's objection the written
report of the findings made by the county autopsy surgeon to the
coroner was not cured by the fact that the defendant afterwards
called the surgeon as its witness and proved by him the same
facts as embodied in his report, where the plaintiff used the report
in the examination of another witness to the injury of the defend-
ant.

[3] ID.—EXAMINATION OF BODY—DISEASED CONDITION OF HEART—
SILENCE OF PHYSICIANS.—Where in such action it was shown that
after the autopsy an examination of the body of the assured was
made by two physicians in behalf of the plaintiff and two others
in behalf of the defendant by stipulation under the terms of the
policy, it was error to permit the plaintiff, as part of her case in
chief, to show by her physicians that neither of defendant's physi-
cians, at the time of the examination, made any statement to the
effect that there was a diseased condition of the heart.

[4] ID.—ACCIDENTAL DEATH—DEATH BY ACCIDENTAL MEANS—DISTINC-
TION.—Where the death is the result of some act, but was not
designed and not anticipated by the deceased, though it be in con-
sequence of some act voluntarily done by him, it is accidental
death, but where death is caused by some act of the deceased
not designed by him, or not intentionally done by him, it is death
by accidental means.

[5] ID.—INSURANCE AGAINST DEATH BY ACCIDENTAL MEANS—INSTRUC-
TION.—In an action on a policy insuring against death as the
result of accidental means, an instruction which told the jury in
effect that if the death of the assured was due to a rupture caused
by a strain naturally incident to the exertion of plowing, but
was an unexpected result thereof, the plaintiff could recover, was
erroneous, since it failed to distinguish between the result to the
assured and the means by which that result was brought about.

[6] ID.—DEATH FROM JUMPING OF PLOW—INSTRUCTION.—Where in an
action to recover on a policy insuring against death as the result
of accidental means, there was evidence that death was caused by
the jumping of a plow, which the assured was using in hard
ground, the defendant was entitled to have the jury instructed
that if there was no more lurch or sway or swing to the plow
than was usual and ordinarily incident to the character of plowing
that the assured was doing, it was not an accident for which
recovery could be had under the terms of the policy.

[7] ID.—ESTABLISHMENT OF THEORY—INSTRUCTIONS.—It was not error
in such action to refuse to give either of several instructions re-
quested by the defendant to the effect that a theory cannot be said
to be established in a civil case where the facts and circumstances
from which it is sought to establish such theory are consistent
with it, and are also consistent with a contrary theory.

[8] ID.—DEATH BY DISEASE — BURDEN OF PROOF — INSTRUCTION.—In
such action, it was error to instruct the jury to the effect that the
burden rested upon the defendant to prove by a preponderance of
the evidence that disease was a proximate cause of the death of
the assured, and such error was not cured by the giving of a con-
flicting general instruction to the effect that the burden was upon
the plaintiff to prove by a preponderance of the evidence that
the death resulted from bodily injuries effected solely through
external, violent and accidental means.

[9] ID.—IMMATERIALITY OF DISEASE—INSTRUCTION.—In such action,
an instruction in effect that the presence of disease as a proxi-
mate contributing cause of the death of the assured would be
immaterial unless they also found that the disease itself would
have caused the death of the assured at approximately the same time
without the accident having occurred was in plain disregard of
the terms of the policy.

[10] ID.— EVIDENCE — JUDICIAL NOTICE — PLOWING NOT INCIDENT TO
REAL ESTATE BUSINESS.—Judicial cognizance may be taken of
the fact that the manual labor of plowing is not ordinarily incident
to the occupation of real estate and investments in large cities,

8.   Burden of proof and sufficiency of evidence to show accidental
death under policy of accident insurance, note, 9 **Ann. Cas.** 919.

but is an act incident to at least the occupations of farmer and farm laborer.

[11] ID.—CHANGE OF OCCUPATION—REDUCTION OF AMOUNT RECOVERABLE—CONSTRUCTION OF POLICY.—Under a policy insuring against death as the result of accidental means which provides that if the assured is injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or is injured while doing any act or thing pertaining to any more hazardous occupation, the amount recoverable should be reduced in inverse proportion to the premiums charged for the respective risks, it is not necessary in order for the proviso to become operative, to show, that the act in which the assured was engaged at the time of injury was "habitual" as distinguished from "casual."

[12] ID.—BURDEN OF PROOF.—In an action on a policy insuring against death as the result of accidental means, the burden rests upon the defendant to make good its claim that the amount recoverable should be reduced because the assured received his injury in an occupation more hazardous than that insured against by showing that such occupation was in fact more hazardous, and not merely that it was so classified.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, Norman S. Sterry and Henry F. Prince for Appellant.

Meserve & Meserve for Respondent.

MYERS, J., pro tem.—Plaintiff brought this action as beneficiary under a policy issued by the defendant insuring plaintiff's husband "against disability or death resulting directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means." Defendant appeals from the judgment on verdict in favor of the plaintiff for the full amount of the policy. It is conceded that the evidence is legally sufficient to support the verdict, and the appeal is predicated solely upon claimed errors of law, in the admission and rejection of evidence and the giving and refusal of instructions.

The allegation of the complaint was to the effect that the assured, while assisting a Japanese in doing some plowing, met with an accident, "in substance, that the said plow which the said James G. Ogilvie was using at said time, came in contact with a root or other obstruction unforeseen, causing said plow and its plow handle to be given a severe wrench, thereby causing the said James G. Ogilvie to be given a severe wrench and strain," as a result of which his heart was ruptured and he died therefrom five days later. Defendant denied that assured sustained any injury from accidental means, and alleged that his death was caused and was contributed to by disease.

The issues, so far as the right of recovery is concerned, may be stated as follows: (1) Did Mr. Ogilvie sustain an injury through accidental means? (2) If so, did such injury solely cause his death, or was his death contributed to by a pre-existing condition of disease? The evidence was amply sufficient to support a finding in favor of the defendant upon each of these issues, and as such a finding, upon either issue, would have precluded recovery it becomes important to consider the claimed errors.

[1] Upon the trial the plaintiff offered in evidence the written report of his findings made by Dr. Wagner, the county autopsy surgeon, to the coroner and filed with the county clerk. It was received in evidence over the objection of the defendant on the ground that it was hearsay and incompetent and that Dr. Wagner was then present in court and available as a witness. Counsel for defendant stipulated that Dr. Wagner was the duly qualified and acting autopsy surgeon and that the examination and the report were regularly made by him in the performance of his official duties. This is the only basis suggested to us for its admissibility in evidence and it should have been excluded as hearsay. It was an unsworn statement, not subject to cross-examination, made by a stranger to this action, and made in the course of a proceeding to which this defendant was neither party nor privy. Various sorts of public records are made receivable as *prima facie* evidence by virtue of express provision of statute, but we have been cited to no such statute as applicable to this report.

[2] It is claimed that this error was rendered harmless by the fact that the defendant afterward called Dr. Wagner

as its witness and proved by him the same facts embodied in his report, as to the physical findings. We would be inclined to adopt this view if the use made by the plaintiff of this report had gone no further. But the plaintiff then called Dr. Pallette as her witness, and after defining and explaining to the jury the meaning of certain technical words found in the report, he testified that the expression, "moderate degree of senile changes," as used in the report, had no definite and fixed meaning in the medical profession. He was then asked "whether or not that report shows any disease or diseased condition of the heart"? This question was objected to upon the grounds, among others, "that the statement itself is not admissible," "that it is not permissible for this witness to explain what is meant by another surgeon in making the report," and that "it is not shown that this witness was present at the examination or has any knowledge or means of knowing what the autopsy surgeon meant." The objection was overruled and the witness answered, "No."

Plaintiff's counsel do not attempt to justify this ruling, but assert that it was harmless. We cannot agree. The question of a diseased condition of the heart was one of the vital issues in the case. Defendant produced much evidence tending to establish such diseased condition. In the words of its counsel, "since respondent could not establish an undiseased condition of the heart by the testimony of the coroner's physician, she introduced his written report and was permitted to have another doctor interpret that report as not showing a diseased condition, although the terms used admittedly had no definite meaning in medical parlance."

But it is said that this error was "cured" by the fact that the defendant afterward called Dr. Wagner as a witness, who testified that he did find a diseased condition of the heart. We fail to see how this cured the error. It still left in the case the incompetent testimony on the side of the plaintiff; to which it is to be added that Dr. Wagner, as a witness, was apparently impeached in the eyes of the jury by his own report as interpreted by Dr. Pallette.

The report as first admitted was limited to the portion thereof which stated the physical and pathological findings.

Dr. Wagner, in his direct examination by defendant, mentioned that "there was a history of plowing that I had to embody in the notes." He was then asked upon cross-examination if that history formed a material part in his examination and opinion. He replied, "I had to take it into consideration." Plaintiff thereupon offered in evidence the entire report, containing the following recital: "There was a history of a severe strain while plowing and striking a large root." The court overruled defendant's objection that it was hearsay, and admitted it in evidence. It was hearsay "twice removed," and should have been excluded. It was not admissible for the purpose of impeaching the witness, because it did not tend to contradict or modify what he had testified to.

[3] It was shown at the trial that after the autopsy an examination of the body was made by two physicians in behalf of the plaintiff and two others in behalf of the defendant by stipulation "under the terms of the policy." As part of her case in chief, and before any witness had testified for defendant, plaintiff was permitted to show by her said two physicians that neither of defendant's physicians, at the time of the examination, made any statement to the effect that there was a diseased condition of the heart. This was over defendant's objection, and without showing that any conversation whatever took place at said time between any of said physicians. There was nothing other than is here stated to indicate that either of the physicians had any authority to make any admission binding upon the defendant. There was a provision in the policy giving the defendant the right to examine the person of the assured at any time after injury. If this be regarded as indicating that the physicians had authority to make admissions in behalf of the defendant, nevertheless it was not shown that they had made admissions. It was merely shown that they made no denials, without showing any condition or circumstance, which called upon them to say anything.

[4] In considering the instructions given and refused, it is necessary to keep in mind the fact that the policy here sued upon did not insure against accidental death. It insured only against death as the result of accidental means. The distinction is well recognized in this state. "Where

the death is the result of some act, but was not designed
and not anticipated by the deceased, though it be in con-
sequence of some act voluntarily done by him, it is acci-
dental death. Where death is caused by some act of the
deceased not designed by him, or not intentionally done by
him, it is death by accidental means." (*Olinsky* v. *Railway
Mail Assn.*, 182 Cal. 669 [14 A. L. R. 784, 189 Pac. 835].)

[5] The trial court instructed the jury that "the term
'accident,' as used in the policy here in question and in
these instructions, denotes an event that takes place with-
out one's foresight or expectation . . . or is an unusual
effect of a known cause, and therefore not expected
. . . It is an event happening unexpectedly or undesign-
edly." This instruction, together with plaintiff's instruc-
tion No. V, which followed it, tells the jury in effect that
if the death of the assured was due to a rupture caused
by a strain naturally incident to the exertion of plowing,
but was an unexpected result thereof, the plaintiff could
recover. It should not have been given, because "it fails
to give effect to the plain language of the policy in that
it does not distinguish between the result to the insured
and the means by which that result was brought about.
As we have already pointed out, the insurance is not
against accidental injury or death, but is against death
resulting from injuries effected by accidental means."
(*Rock* v. *Travelers' Insurance Co.*, 172 Cal. 462, 467
[L. R. A. 1916E, 1196, 156 Pac. 1029].)

[6] The court refused the defendant's request to in-
struct the jury to the effect that if the assured received
a strain or wrench as a result of the sway or swinging of
the plow, and there was no more lurch or sway or swing
to the plow than is usual and ordinarily incident to the
character of plowing that the assured was doing, it was
not an accident for which recovery could be had under
the terms of the policy. One of plaintiff's witnesses had
testified that the ground where the assured was plowing
had not been plowed for at least five years and "was so
hard you could not keep the plow in the ground," that
"the plow was jumping in and out of the ground." Under
such circumstances we think the defendant was clearly
entitled to have this instruction, or the substance thereof,
given to the jury. For like reasons, defendant's requested

instruction No. XIX, or the equivalent thereof, should have been given.

[7]    Complaint is made of the court's refusal to give either of several instructions requested by defendant to the effect that "a theory cannot be said to be established in a civil case where the facts and circumstances from which it is sought to establish such theory are consistent with it, and are also consistent with a contrary theory." It is true that a verdict may not lawfully be predicated upon mere conjecture or speculation, and that when two opposite conclusions appear equally probable from all of the evidence neither of them can be said to be proven. But from the mere fact that both conclusions or theories are consistent with the facts proven, it does not necessarily follow that both are equally probable. If to the minds of the jury, under such circumstances, the one fairly appears more probable than the other, it is established by preponderance of the evidence. These instructions were properly refused.

[8]    The trial court erroneously instructed the jury to the effect that the burden rested upon the defendant to prove by a preponderance of the evidence that disease was a proximate cause of the death of the assured (*Kellner* v. *Travelers' Ins. Co.,* 180 Cal. 326 [181 Pac. 61, 63]), and refused the specific instructions to the contrary which were requested by the defendant. This error was not cured by the giving of a conflicting general instruction to the effect that the burden was upon the plaintiff to prove by a preponderance of the evidence that the death resulted "from bodily injuries effected solely through external, violent and accidental means." (*Rathbun* v. *White,* 157 Cal. 248, 253 [107 Pac. 309, 311].)

[9]    The court further instructed the jury, in effect, that the presence of disease as a proximate contributing cause of the death of the assured would be immaterial unless they also found that the disease itself would have caused the death of the assured at approximately the same time without the accident having occurred. This was in plain disregard of the terms of the policy, and substantially identical with an instruction which was expressly disapproved by this court in *Kellner* v. *Travelers' Ins. Co., supra.*

See, also, *Clarke* v. *New Amsterdam Casualty Co.*, 180 Cal. 76 [179 Pac. 195].

Enough has been shown, we think, to make it apparent that this verdict was predicated upon an erroneous conception of the law, and to necessitate a reversal, even if we could assume that the verdict was not influenced by the admission of the incompetent testimony to which we have referred.

Inasmuch as this case must be sent back for retrial it is proper that we consider the assignments of error relating to the amount recoverable under the policy. In the schedule of warranties attached to and a part of the policy, the assured stated his occupation as "real estate & investments" with the duties "usual thereto." He further stated therein: "I understand that risks are classified according to occupation and that my occupation above described is classified preferred." Section 20 of the policy provided: "If the insured is injured after having changed his occupation to one classified by this company as more hazardous than that herein stated, *or is injured while doing any act or thing pertaining to any more hazardous occupation,*" the amount recoverable should be reduced in inverse proportion to the premiums charged for the respective risks. (Italics ours). The defendant conceded at the trial that the assured had not changed his occupation, but its contention was that the manual labor of plowing is not incident to the occupation of "real estate and investments," but is an act incident to the occupation of "farmer," "farm laborer" and "common laborer," each of which was classified by it as "hazardous," and required a premium two and one-half times larger than was paid by the assured; and that the amount recoverable under the policy was thereby reduced from $7,500 to $3,000.

[10] Defendant contended at the trial that the court should take judicial cognizance of the fact that plowing is not incident to the occupation of real estate and investments but is incident to the other occupations above named, and should have so informed the jury. The learned trial judge might well have done so. Courts have taken judicial notice of the general character of business of a crematory, of building and loan associations, of the lumber industry, of a barber shop and shoe shining parlor, of a mercantile

agency and of professions generally. "The judicial notice which courts take of matters of fact embraces those facts which are within the common knowledge of all, or are of such general notoriety as to need no evidence in their support." (*People* v. *Mayes,* 113 Cal. 618, 625 [45 Pac. 860, 862] ; *Edson* v. *Southern Pacific R. R. Co.,* 144 Cal. 182, 189 [77 Pac. 894].)   It must be conceded to be a matter of common knowledge that the manual labor of plowing is not ordinarily incident to the occupation of real estate and investments in large cities, but is an act incident to at least the occupations of farmer and farm laborer.   And this is no less a fact because of the circumstance that men in the real estate business have been known to plow.

[11]   The question of the legal effect of the italicized words above quoted from the policy has not been adjudicated by the courts of this state.   Some reliance is placed by plaintiff upon the line of decisions of which the case of *Berliner* v. *Travelers' Ins. Co.,* 121 Cal. 458 [66 Am. St. Rep. 49, 41 L. R. A. 467, 53 Pac. 918], is an example, holding that the assured must have actually changed his occupation in order that such a proviso should become operative.   But the language here relied upon by the defendant was not in the policy which was before this court in the Berliner case.   It is in fact asserted with apparent reason that the language here relied upon was embodied in defendant's policies in response to the suggestion found in the opinion in the Berliner case of a means by which the insurer might have avoided the result which there followed. That suggestion was in the following language: "If the company intended to say to the assured that if he did any act which did not strictly belong to his own occupation, but was embraced more properly in some other business, and if thereby any harm to him accidentally resulted, that in such event he could claim nothing under his policy, it was easy for them to do so in plain language." "That," says the defendant, "is precisely what we have done,— except that we have provided for a reduction of the amount, instead of a forfeiture of the policy."

The United States circuit court of appeals, sixth circuit, having before it a policy containing a provision identical with that here under consideration, as applied to a situation substantially analogous, held that the proviso

would be inoperative unless the act in which the assured was engaged at the time of injury was "habitual," as distinguished from "casual," and that the case should have been submitted to the jury to determine which of these it was. Inasmuch as the court said in its opinion: "It does not appear that Reading (the assured) ever ran the elevator before," we are left in some doubt as to just what question it deemed should have been submitted to the jury (*Gotfredson* v. *German Commercial Accident Co.*, 218 Fed. 582 [L. R. A. 1915D, 312, 134 C. C. A. 310]). The supreme court of Iowa, in the case of *Holiday* v. *American Mut. Acc. Assn.*, 103 Iowa, 178 [64 Am. St. Rep. 170, 72 N. W. 448] held an identical policy provision to be inoperative as applied to the case of an assured who was injured by the accidental discharge of his gun while hunting. The Texas court, in a case presenting an exactly similar situation, refused to follow the Holiday case, saying: "The decision is in the very teeth of language that is plain and simple, and had the effect of destroying the contract made by the parties and of substituting therefor one made by the court." (*Lane* v. *General Accident Ins. Co.* (Tex. Civ. App.), 113 S. W. 324). The Washington court, in a similar case, disapproved and refused to follow the Holiday case, saying: "It seems to us that the holding in the Iowa case practically reads out of the contract that clause" (the one here under consideration). (*Green* v. *National Casualty Co.*, 87 Wash. 237 [151 Pac. 509].) To the same effect are *Montgomery* v. *Continental Casualty Co.*, 131 La. 475 [59 So. 907], *Loesch* v. *Union Casualty & Surety Co.*, 176 Mo. 654 [75 S. W. 621], and *Ridgely* v. *Aetna Life Ins. Co.*, 160 App. Div. 719 [145 N. Y. Supp. 1075] (affirmed in 217 N. Y. 720 [112 N. E. 1073]). We are of the opinion that the better reason, as well as the weight of authority, is in support of that rule which gives effect to the plain intent of the language used by the parties in their contract.

[12] In view of what we have said above, it is unnecessary to review the numerous errors claimed to have been committed in the trial of this branch of the case. It should be pointed out, however, that the burden rests upon the defendant, in order to make good its claim in this behalf, to allege and prove that the occupation of "farmer," or "farm laborer," or "common laborer," as the case may be,

was in fact more dangerous than that of "real estate and investments," not merely that it was so classified. Such is the plain intendment of the language used, construing it strictly, as we must, against the insurer. This the defendant did not do in the trial below, but the plaintiff waived this omission (so far as that trial was concerned) by proceeding throughout the trial as if the issue had been properly presented.

The judgment is reversed.

Waste, J., Lawlor, J., Lennon, J., Shaw, C. J., and Richards, J., *pro tem.*, concurred.

Rehearing denied.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.