[Civ. No. 4558. First Appellate District, Division Two.—August 31, 1923.]

## JANE R. TOBIN (Feme Sole), Respondent, v. NATIONAL CASUALTY CO. (a Corporation), Appellant.

[1] LIFE INSURANCE — CHANGE OF OCCUPATION — CLASSIFICATION OF HAZARD—REDUCTION OF INDEMNITY—VALIDITY OF PROVISION.—A provision in a life insurance policy reducing the amount of indemnity in the event the insured is injured after having changed his occupation to one classified by the insurance company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, is valid.

[2] ID.—EVIDENCE—PROOF OF DEATH—STATEMENTS OF BENEFICIARY—ADMISSIBILITY OF.—Statements in the proof of death furnished by the beneficiary to the insurer relating to the nature of the insured's work at the time of his injury are admissible against the beneficiary as solemn declarations against interest and are sufficient to establish the facts to which they relate in the absence of any attempt upon the part of the beneficiary to contradict or modify them by explanation.

[3] ID.—ACTION UPON POLICY—CHANGE OF OCCUPATION—INDEMNITY—EVIDENCE—FINDING.—In an action upon a policy of life insurance, which recited, and in the application for which the insured stated, that his occupation was that of "Hotel Keeper—office and supervising duties only," uncontradicted evidence showing that the insured met his death while returning to the hotel of his employer in an automobile with help and supplies, and that such a duty came within the occupation of "Hotel Keeper General Duties," classified by the insurer as more hazardous than that stated in the policy, and for which a lesser indemnity would be paid, was sufficient to have supported a finding in favor of the insurer that the insured was engaged in an act or thing pertaining to an occupation other than the one covered by his policy and classified by the insurer as a more hazardous occupation than the one mentioned in the policy.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Reversed.

1. Provision in insurance policy for reduction of indemnity for injury while doing act pertaining to more hazardous occupation, notes, 22 A. L. R. 780; 26 A. L. R. 123; L. R. A. 1915D, 312.

The facts are stated in the opinion of the court.

J. F. Riley for Appellant.

Egan & Morris and Hugh F. Keon, Jr., for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of $5,000 upon a policy of insurance issued by defendant upon the life of Johannes W. K. Kooy. The plaintiff is the beneficiary under said policy.

Plaintiff alleged the issuance and delivery of the policy on April 10, 1918, the payment of the premium thereon; that on June 20, 1918, said Kooy died as the result of bodily injuries, effected through accidental means; that said death was not the result of suicide; that pursuant to the terms and conditions of said policy of insurance, plaintiff gave to said defendant immediate notice of the aforesaid injury and death of the said Kooy and furnished to defendant affirmative proofs of said injury and death within ninety days after the date of the injury and death; that plaintiff complied with all the terms and conditions of said policy and demanded payment thereof; that the sum called for by said policy has not been paid. A copy of the policy was attached to the complaint as an exhibit. It provides that the defendant "Does hereby insure Johannes W. K. Kooy of San Francisco, California, the person described in said application who states his occupation to be that of Hotel Keeper—Office and Supervising Duties only, duties Managing Hotel, subject to the provisions and conditions herein contained and endorsed hereon." There was attached to said policy a copy of the application therefor. It is in the form of questions and answers, among which appear the following:

"4. I am (Member of firm
        employed by Union Oil Co. of Cal.

                                    Nature of business)
                                    Hotel Managing.

"6. My occupation is Hotel Keeper—office and supervising duties only.

"7. The duties of my occupation are fully described as follows:

"Managing Hotel."

At the bottom of said application appears the following:

"The age, occupation and duties as stated above, call for the following classification, indemnities and premiums:

| Monthly Acc'd. | Monthly Sickness. | Accidental Death. |
| Class A. Ind. $100.00 | Ind. $ | Ind. $5,000." |

As one of its defenses to the action defendant pleaded the following clause in the policy sued upon: "Standard Provisions. This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, *or while he is doing any act or thing pertaining to any occupation so classified,* except ordinary duties about his residence or while engaged in recreation, in which event the company will pay *only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation.*"

A reference to the copy of the policy shows that it contains the further provision: "If the law of the state in which the insured resides at the time this policy is issued requires that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the state official having supervision of insurance in such state then the premium rates and classification of risks mentioned in this policy shall mean only such as have been last filed by the company in accordance with such law, but if such filing is not required by such law, then they shall mean the company's premium rates and classification of risks last made effective by it in such state prior to the occurrence of the loss for which the company is liable."

The answer also set out that Kooy had stated and represented in his application for said policy that his occupation was "Hotel Keeper—Office and Supervising Duties Only"; that defendant is informed and believes "that said insured was injured and died as a result of said injuries after having changed his occupation to one classified by the company as more hazardous than that stated in the said policy,

namely, to Hotel Keeper, General Duties, and that the said injuries resulting in the death of the insured were received while engaged in the duties of said latter occupation and in work and duties not included in the said occupation stated in said application and said policy." "That the premium paid by said insured would have purchased at the rate and within the limits fixed by the company for such more hazardous occupation an indemnity in event of death of $3,000."

There are allegations in the answer that insured was intoxicated at the time he sustained his injuries and was driving at an illegal rate of speed in an automobile upon the public highway, but as the findings upon these matters are against the defendant upon conflicting evidence, we are not concerned with these issues upon appeal. The only issues for our consideration are whether or not the record shows the insured to have been engaged in any act or thing pertaining to an occupation other than the one covered by his policy and classified by the insurance company as a more hazardous occupation than the one mentioned in the policy, and if the record does so show, what is the effect of this showing upon the liability of the defendant under the policy?

We think the position of the appellant upon these matters is well taken. The policy of insurance and the application therefor were pleaded by the plaintiff and found by the court as pleaded. They contain the statement that the insured was classified as a hotel-keeper, office and supervising duties only, and that he applied for insurance under such classification. The plaintiff and beneficiary under the policy, stated in the proof of death submitted to the defendant that insured was a hotel-keeper, office and supervising duties only. A witness for the defendant testified that the amount of premium paid by insured would pay for insurance to the amount called for by the policy only in the event insured was classified as hotel-keeper, with office and supervising duties only; that under the classification of hotel-keeper, general duties, the premium paid by insured would purchase only about $2,500 worth of insurance.

These matters are not controverted in the record and it is clear as a starting point that the contract between the insured and the defendant called for insurance as a hotel-

keeper, office and supervising duties only, and that the occupation of hotel-keeper with general duties was classified by the defendant as a more hazardous occupation requiring the payment of a larger premium.

[1] As to the validity and effect of the clause in the policy relative to the reduction of indemnity under the circumstances set forth, it is unnecessary for us to enter into a lengthy discussion because the matter has been settled recently in this state, after a most comprehensive review of the authorities, by the case of *Ogilvie* v. *Aetna etc. Ins. Co.*, 189 Cal. 406 [26 A. L. R. 116, 209 Pac. 26]. In that case, in discussing the effect of a provision substantially the same as the one involved in the instant case, our supreme court said: "We are of the opinion that the better reason, as well as the weight of authority, is in support of that rule which gives effect to the plain intent of the language used by the parties in their contract."

We therefore pass to the question of the sufficiency of the evidence to sustain the allegation of the answer that the insured, at the time of his injuries, was engaged in an act pertaining to an employment classified by the company as more hazardous than the one mentioned in the policy. The contention of defendant in this connection is that the evidence shows that the insured at the time of his injuries was engaged in the general duties of a hotel manager—a broader field than "office and supervising duties only." Respondent maintains that the evidence relied upon by appellant to establish the nature of insured's activities at the time of his injuries is not admissible against her, and that it does not establish the contention even though admissible.

The proof of death sworn to by the plaintiff and beneficiary and furnished to the defendant pursuant to the terms of the policy was introduced in evidence. In it plaintiff stated, in answer to the question, "Who were present when the injury was received?" "Only the two passengers who were going to the hotel to work. Tony Ackerman, the other a William Lennox." Attached to the proof of death was a statement of the employer of insured which contained the following: "What was his occupation at time of injury? Manager of Hotel for Union Oil Company of California at Oleum Refinery. What were the duties of that occupation?

Supervision of hotel for employees. On what work was he engaged at the time of accident? Bringing back supplies and labor for hotel in his automobile.''

Respondent contends that these proofs of death are not evidence against the plaintiff upon the question of the nature of the insured's work at the time of his injury. It appears from the record that the plaintiff made no attempt to contradict the statements submitted by her to the insurer in the proof of death. Had she introduced any evidence to contradict these statements, there is no question under the later authorities that they might have been disputed. But she allowed them to remain uncontradicted in the record. Indeed, they were corroborated by other testimony and by certain facts and circumstances appearing from the evidence introduced on behalf of the defendant, to which we shall advert later.

In *Travelers' Ins. Co.* v. *Melick,* 65 Fed. 178 [27 L. R. A. 629, 12 C. C. A. 544], the proof of death stated that the insured cut his throat. The defendant contended that this was conclusive upon the claimant and the court said: ''The better rule upon this subject is that statements of this nature in proofs of loss are binding and conclusive upon the party who makes them until, by pleading or otherwise, he gives the insurance company reasonable notice that he was mistaken in his statement, and that he will endeavor to show that the death was the result of a different cause from that stated in his proofs. After the insurance company has received due notice of this fact, the proofs have the probative force of solemn admissions under oath against interest, but they are not conclusive.''

In *Hanna* v. *Connecticut Mut. Life Ins. Co.,* 150 N. Y. 526 [44 N. E. 1099], the defense was intemperance. The proof of death showed insured had died of alcoholism. No proof to the contrary was offered by the plaintiff and defendant company moved for a nonsuit, which was granted. Upon appeal it was said: ''But the difficulty with the plaintiff's case is that there was no evidence with respect to the cause of the death of the insured, other than that it was the result of intemperance. That evidence was furnished through the plaintiff to the defendant in the certificates which she delivered to the defendant's agent when making her demand of payment of the policy. Upon those proofs

as so furnished, *the insurance company had the right to rely as her representations, unless and until explained.* They operated as admissions by her of a material fact and were competent evidence against her, under the rule as to admissions against interest." The court then quoted from *Spencer* v. *Citizens' etc. Ins. Assn.,* 142 N. Y. 509 [37 N. E. 618], as follows: "The only proof upon which the defendant relied was the admission in the original proofs of loss that the illness of the deceased commenced February 6, 1890. This was competent evidence in support of the issue, because it was an admission by a party to the record against her interest. . . . The burden of proof was not changed by the admission. Unexplained it would have been conclusive, and the defense would have been made out."

In *Stephens* v. *Metropolitan Life Ins. Co.,* 190 Mo. App. 673 [176 S. W. 253], the court said: "Proofs of death furnished by a beneficiary to the insurer under the policy, are admissible in evidence against such beneficiary as proof by him of the truth of the statements therein contained, and, when not contradicted or explained, may become conclusive against the right to recover on the policy."

In *Castens* v. *Supreme Lodge, etc.,* 190 Mo. App. 57 [175 S. W. 264], it was said: "No one can doubt that the proof of death so furnished by the beneficiary in the policy constitutes *prima facie* evidence of the facts therein stated. Such proof is conclusive, too, on the party furnishing it, touching the fact of suicide unless contradicted or properly explained, as by showing some mistake or misapprehension . . . to relieve against it."

In *Hill* v. *Aetna Life Ins. Co.,* 150 N. C. 1 [63 S. E. 124], where the proof furnished showed that insured had stepped from a train while in motion, the court said: "The proofs of loss, though not conclusive and irrebuttable by plaintiff are *prima facie* true as against him (citing cases). The burden was upon the plaintiff to show that a statement made in the proofs of loss was erroneous in fact. The plaintiff, having filed them, has vouched for their truth. He must show mistake . . . He must show that there was error as to the fact, not merely that he relied upon hearsay statements."

Other cases pertinent upon the question of the admissibility of proofs of death as evidence against the beneficiary

are: *Zimmerman* v. *Fraternal etc. Assn.,* 166 Wis. 446 [166 N. W. 5]; *Prudential Ins. Co.* v. *Breustle's Admr.,* 19 Ky. Law Rep. 544 [41 S. W. 9]; *Mutual Benefit Life Ins. Co.* v. *Newton,* 22 Wall. (U. S.) 32 [22 L. Ed. 793, see, also, Rose's U. S. Notes]; *Dennis* v. *Union Mut. Life Ins. Co.,* 84 Cal. 570 [24 Pac. 120].

[2] Our conclusion in the instant case is that the facts stated in the proof of death furnished to the defendant by the plaintiff were admissible against her as solemn declarations against interest and were sufficient to establish such facts in the absence of any attempt upon the part of the plaintiff to contradict or modify them by explanation.

Respondent urges that the affidavit of the employer, attached to the proof of death, was not admissible against plaintiff under the rule in the case of *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 Pac. 269], because she had no discretion about furnishing the same but was required to do so under the terms of the policy, and because she had no control over the contents of such affidavit. Conceding that the employer's affidavit was not admissible for any purpose against the plaintiff, there is yet sufficient admissible evidence to support appellant's position with reference to the activities of the insured at the time of the accident in the affidavit of the plaintiff in the proof of death to the effect that at the time of the accident there were present in the automobile with the insured two passengers who were going to the hotel to work, and in the testimony of the witness Falk, who testified that he had been with the insured at about 12:30 or 1 o'clock on the day of the accident and that upon leaving him insured stated that he was going to get men to go to work for him; also the testimony of the witness Adams, testifying for plaintiff, that he came upon the overturned automobile upon the public highway and found the insured and one of his passengers lying in the road unconscious and that he noticed fruit and vegetables strewn over the highway in such abundance as to suggest to his mind the overturning of a fruit-peddler's wagon; also the testimony of the witness Gale to the effect that insured had purchased some fruit and vegetables from him and had stated that he would call and take them away in his automobile; also the testimony of a dealer in butter and eggs to the effect that

insured would sometimes carry away in his automobile his purchases of butter and eggs.

[3] While it is undoubtedly true that, taken all together, this evidence is scanty, it stands uncontradicted and is all that was presented upon the issue and the finding should have been in accordance therewith. Had such a finding been made, it is clear under the authorities that the plaintiff would have been entitled to recover but $2,500 instead of $5,000. This is because the record contains uncontradicted testimony of the Pacific coast manager of the defendant company to the effect that under the policy and schedules of classification and rates issued by the defendant company and filed with the state insurance commissioner, a person engaged in the general duties of hotel-keeper—not office and supervising duties only—would be entitled, under the policy involved here, to an indemnity of $2,500 and this amount of indemnity would also be payable under the policy if the insured met his death while engaged in the duties of taking help and supplies to his place of business.

In *Metropolitan Acc. Assn.* v. *Hilton,* 61 Ill. App. 100, insured was classed as "proprietor of livery—office duties," Class A. He was injured while driving one of his own cabs. Defendant contended that while so engaged, he should be classed as a cabman, class C. The policy provided that in case of injury sustained while engaged in any act more hazardous than that given, the insurance should not be void, but insured should receive within the limits of the more hazardous class that indemnity which his payments would have purchased therein. The defendant sought to show what indemnity the premium paid would have purchased in the more hazardous class, but the lower court would not permit it. On appeal this was held to be error and the judgment was reversed. It was said: "It is quite clear that the act of the plaintiff in driving the cab was not merely incidental to his general occupation, but was in fact a part of it. Apparently he was doing so for hire and profit, and that in the line of his business as a livery proprietor. *It was not, however, such an act as would be included within the range of office duties, specified in Class A,* and no doubt was more hazardous."

In *Montgomery* v. *Continental Casualty Co.*, 131 La. 475
[59 South. 907], plaintiff was insured as a draftsman "with
office and traveling duties only." He was injured while
operating a press drill during the noon hour, for recreation.
The policy provided that if the insured was injured after
having changed his occupation to one classified by the
company as more hazardous than that stated in the policy
or was injured while doing any act or thing pertaining to
any occupation so classified, the company's liability should
be only for such proportion of the principal sum or weekly
indemnity provided in the policy as the premium paid by
insured would purchase at the rate and within the limits
fixed by the company for such more hazardous occupation.
In the trial court it was held that the insured was entitled
to indemnity on the basis of the less hazardous occupation,
but upon appeal, the judgment was modified so as to award
to insured only the amount of indemnity which the premium
paid would have purchased in the more hazardous occupa-
tion, an act of which the insured was doing when injured.

Other cases in point are: *Lane* v. *General Accident Ins.
Co.* (Tex. Civ. App.), 113 S. W. 324; *Green* v. *National Cas.
Co.*, 87 Wash. 237 [151 Pac. 509]; *Loesch* v. *Union Cas. Co.*,
176 Mo. 654 [75 S. W. 621]; *Ebeling* v. *Bankers Cas. Co.*, 61
Mont. 58 [22 A. L. R. 777, 201 Pac. 284]; *Aldrich* v. *Mer-
cantile Mut. Acc. Assn.*, 149 Mass. 457 [21 N. E. 873].

Some question has suggested itself as to the sufficiency of
the record made by defendant in the matter of proving that
the occupation of "hotel keeper, general duties" was a more
hazardous one than that of "hotel keeper, office and super-
vising duties only," in view of certain language contained
in the recent case of *Ogilvie* v. *Aetna etc. Ins. Co.*, 189 Cal.
406 [26 A. L. R. 116, 209 Pac. 26]. We think, however, that
there is a vital distinction between the policies of insurance
involved in the two cases. In the Ogilvie case the decision
rests upon the following clause in the policy: "or is injured
while doing any act or thing pertaining to *any more hazard-
ous occupation.*" It does not say any occupation classi-
fied by the company as more hazardous, but any occupa-
tion actually more hazardous. The supreme court said: "It
should be pointed out, however, that the burden rests upon
the defendant to make good its claim in this behalf, to
allege and prove that the occupation of 'farmer' or 'farm

laborer' or 'common laborer,' as the case may be, was in fact more dangerous than that of 'real estate and investments,' not merely that it was so classified. Such is the plain intendment of the language used, construing it strictly, as we must, against the insurer.''

In the instant case the language used was: ''while he is doing any act or thing pertaining to any occupation so classified.'' The plain intent of this language is that the occupation should be classified by the company as more hazardous, regardless of the actual facts. The Ogilvie case rests upon the fundamental principle of the sanctity of contract and upon the same principle and by the same reasoning, it was competent for the insured in the instant case to contract to be bound by the classification of the company on file with the state official having supervision of insurance in this state. It was alleged and proved by the defendant that such classification was on file and that by such classification, ''hotel keeper, general duties'' was a more hazardous occupation than that of ''hotel keeper, office and supervising duties only,'' and that under the former classification, a higher premium was required to be paid than under the latter. Therefore, the statement in the Ogilvie case regarding the necessity of proving actually increased hazard is inapplicable to the facts of the instant case.

In view of the foregoing conclusions, it is unnecessary for us to discuss the various alleged errors in rulings upon the evidence. The judgment must be reversed upon the merits. It is so ordered.

Nourse, J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 29, 1923.

All the Justices concurred.