STANDARD LIFE & ACCIDENT INS. CO. OF DETROIT, MICH., v. CARROLL.

(Circuit Court of Appeals, Third Circuit.    April 11, 1898.)

No. 8.

ACCIDENT INSURANCE—FAILURE TO ANNEX COPY OF APPLICATION TO POLICY.
    The Pennsylvania act of May 11, 1881, declaring that, in all controversies relating to "life and fire insurance policies," neither the application, constitution, by-laws, nor other rules of the company shall be received in evidence or be considered as part of the contract or policy, unless copies of the same are attached thereto, does not include policies of insurance against bodily accidents.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

C. Heydrick, for plaintiff in error.

W. J. Breene, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

ACHESON, Circuit Judge. The question for our determination is whether, under the special verdict, judgment should have been entered in favor of the plaintiff below in the sum of $1,600, with interest from the 1st day of July, 1896, or in the sum of $4,000, with interest from said date. The action was upon an accident insurance policy dated January 24, 1895, which provides as follows:

"The Standard Life and Accident Insurance Company of Detroit, Michigan, in consideration of the warranties in the application for this policy, and of twenty-four dollars, hereby insures John Carroll, of Titusville, Pa., by occupation a passenger conductor, under classification extra preferred, for the term of twelve calendar months from noon of twenty-fourth day of January, 1895, in the sum of twenty dollars per week, against loss of time, not exceeding fifty-two consecutive weeks, resulting from bodily injuries caused solely, during the term of this insurance, by external, violent, and accidental means, which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured; or if the entire loss of one hand or foot, by severance at or above the wrist or ankle, shall result from such injuries alone within ninety days, will pay the insured one-third the principal sum herein named, as a specific indemnity, in lieu of said weekly indemnity; or if such injuries shall, within said period, entirely destroy the sight of one eye, one-eighth of said principal sum, as a specific indemnity, in lieu of said weekly indemnity; or in the event of the entire loss of two hands or two feet, or of one hand and one foot, by severance at or above the wrist or ankle, or of the entire loss of the sight of both eyes, within ninety days, solely through the injuries aforesaid, will pay the insured the full principal sum thereof; or, if death shall result from such injuries alone within ninety days, will pay the principal sum of four thousand dollars to Annie Carroll, wife, if surviving, or, in the event of her prior death, to the legal representatives or assigns of the insured: except that, if the insured be injured in any occupation or exposure classed by this company as more hazardous than that stated in said application, the insurance, weekly indemnity, or specific indemnity shall be only for such sum as the premium paid will purchase at the rate fixed by said company for such increased hazard."

The plaintiff's own evidence in chief showed that, while exercising the occupation of a conductor of a mixed railway train,—composed of freight cars, with a combination passenger and baggage car attached,—the insured, John Carroll, received injuries, by external, violent, and accidental means, from which his death resulted within 90 days thereafter. The defendant gave in evidence, under objection, the application of John Carroll for this accident policy, in which he stated his occupation to be that of a "passenger conductor,"—the same occupation as that stated in the policy itself; and the defendant also gave in evidence its "Accident Manual," exhibiting its classification of risks and premiums of insurance in the several classes of hazards, and showing that the occupation of conductor of a mixed railway train was classed by the company as more hazardous than that stated in the said application and policy, and that the premium paid for the said policy of insurance

would purchase, at the rate fixed by the company for such increased hazard, the sum of $1,600, and no more.

From the above extract from the policy, it will be perceived that subsequent change of occupation by the insured during the term of insurance was contemplated by the parties to the contract, and was provided for in and by the policy. To effectuate their intention in this regard, the parties made the application of the insured, and the company's classification of hazards, essential parts of their contract. Nevertheless it is contended that the application and classification of hazards are to be excluded from consideration by reason of the Pennsylvania act of May 11, 1881. That act is as follows:

"An act relating to life and fire insurance policies.
"Be it enacted," etc., "that all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state or by foreign companies doing business therein, which contain any reference to the application of the insured, or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to; and unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered part of the policy or contract between such parties." P. L. 1881, p. 20 (Purd. Dig. 1046, pl. 62).

At the date of this act there was, and still is, in Pennsylvania, a legislative classification of insurance. The act of May 1, 1876 (P. L. 53), provides for the incorporation of four different kinds of insurance companies: First, to make insurance against fire and marine risks; second, to make insurance upon lives; third, to make insurance upon health, and against accidents; and, fourth, to make insurance upon live stock. And the act contains distinctive provisions applicable to these several classes of insurance companies. Now, the act of May 11, 1881, does not purport to cover all policies of insurance, but it is limited to two specified classes. The subject-matter of the act is expressed in its title, "An act relating to life and fire insurance policies"; and the enacting clause reads, "All life and fire insurance policies upon the lives or property of persons," etc. Presumably, the legislature intended to exclude from the operation of the act the classes of insurance policies not named. The suggestion that the act includes policies of insurance against bodily accidents seems to us to be quite inadmissible. The instrument sued on here is strictly an accident insurance policy. The form of the policy is that commonly used in insurance against bodily accidents. The primary purpose is to secure a weekly indemnity in money to the insured in the event of his disability from accidental injury. In certain specified contingencies, resulting from accidental injury, a specified gross sum is to be paid. In some of these resulting contingencies the stipulated specific payment is a proportionate part of the principal sum named in the policy, and in other contingencies the whole principal sum is to be paid. One of the latter is death resulting from the accident within

90 days thereafter. But this contingent provision does not make the instrument a life insurance policy, either in a popular or in a legal sense.

The views we have thus expressed require a reversal of this judgment, unless, as the counsel for the defendant in error contends, the supreme court of Pennsylvania has construed the act of May 11, 1881, as embracing accident insurance policies, equally with life and fire insurance policies. It is claimed (and the reporter's syllabus gives some color to the contention) that in the case of Pickett v. Insurance Co., 144 Pa. St. 79, 22 Atl. 871, that learned court put such a construction upon the act of 1881. Now, we have examined that case with great care, verifying our understanding of the facts as stated in the official report by consulting the copy of the record contained in the paper books found in the Hirst Law Library, Philadelphia (volume 140, Paper-Book Series); and we feel entirely justified in saying that the decision by no means goes to the length supposed. The plaintiff there declared upon "a policy of insurance in the sum of $5,000 upon the life of John W. Moore." The stipulation upon which the plaintiff relied, and under which recovery was had, was in these words:

"The Pacific Mutual Life Insurance Company of California, in consideration of the warranties in the application for this insurance, and the stipulations herein contained, and of the sum of $37.50, does hereby insure John W. Moore, by occupation, profession, or employment a contractor and driller, residing in Warren, county of Warren, and state of Pennsylvania, in the principal sum of five thousand dollars, for the term of twelve months, ending on the fourth day of June, eighteen hundred and ninety, at twelve o'clock noon. The said sum to be paid to the legal representatives of the insured after due notice and satisfactory proof that the insured has, during the continuance of this policy, sustained such violent and accidental injuries as shall externally be visible upon his person, and which shall alone have caused his death within ninety days of the date of such accident."

This was the only insurance effected by the policy. Following the above-cited clause are the words, "Or, if policy be issued for both death and indemnity, will pay the insured;   *   *   *"  but the policy, as issued, was not for both death and indemnity. The insurance was only upon the life of the insured. The instrument, as issued, might well be held to be a restricted life insurance policy, within the meaning of the act of May 11, 1881. The court ruled that the act did apply to that particular policy. The great question in Pickett v. Insurance Co. was whether a condition against "inhalation of gas" applied to an involuntary and unconscious inhalation of poisonous gas by the insured in the course of his employment, and it was held that the condition did not apply. That question, which went to the substantial merits of the case, and was decisive of the controversy, was discussed with great fullness in the opinion of the court. The other question, namely, the applicability of the act of 1881 to the case, was briefly disposed of thus:

"Another ground of defense suggested in the defendant's fifth, sixth, and seventh points was that the deceased was injured in an occupation or exposure classed by the company as more hazardous than that specified in the policy, etc. The points referred to appear to be predicated of testimony which was improperly before the jury. The company, in disregard of the provisions of

the act of May 11, 1881 (P. L. 20), had failed to attach to the policy copies of the by-laws or application, and should not have been permitted, against the plaintiff's objection, to give them in evidence. The act was passed in the interest of honesty and fair dealing, and its provisions should be strictly enforced. We have no doubt they apply to such companies as the defendant."

This language, of course, was used with reference to the particular instrument before the court, and must be so read. There is no warrant, we think, for the assumption that the court thereby meant to declare that the act of May 11, 1881, applies to accident insurance policies. In the present case the offer of the application was not to defeat a recovery, or to set aside any of the stipulations of the policy. The parties contracted with reference to a future change of occupation by the insured. Such change was not to avoid the policy. It was allowable upon agreed terms. The change of occupation simply altered the amount of indemnity so as to accord with the increased hazard. This is the plain contract of the parties, evidenced by the policy itself. The provision for changes of occupation and hazard is reasonable and just, and, indeed, in the interest of the holders of accident insurance policies. We discover no good reason here for denying effect to the provision. The judgment is reversed, with costs to the plaintiff in error in this court; and the cause is remanded to the circuit court, with direction to enter judgment in favor of the plaintiff in the sum of $1,600, with interest from the 1st day of July, 1896, and costs in the court below.