## CENTRAL BUSINESS MEN'S ASS'N v. FAITH.

(Circuit Court of Appeals, Eighth Circuit. September 17, 1925.)

No. 6885.

**1. Insurance ⬅531—Under accident policy, whether occupation to which insured changed was more hazardous in fact or opinion of any one held immaterial.**

Under accident policy providing for reduction in amount of indemnity if insured change his occupation to one "classified by" insurer as more hazardous than that under which he was stated to be insured, he having made such change, whether the occupation to which he changed was in fact, or in the opinion of any one, more hazardous, is immaterial.

**2. Insurance ⬅531—Under accident policy, immaterial that one changing to more hazardous occupation intends some time to return to original employment.**

Under accident policy providing for reduced indemnity if insured change his occupation to one classified by insurer as more hazardous, accident occurring while he was in the occupation to which he had changed, it is immaterial that he intended, when he could, to return to his original employment.

**3. Insurance ⬅531—"Occupation" in accident policy, defined.**

"Occupation," as employed in accident policy, providing for reduced indemnity if insured is injured after changing his occupation to one classified by insurer as more hazardous than that under which he was insured, implies simply that which at time of accident constitutes insured's principal business or pursuit, and engages his attention and time, as distinguished from what is incidentally connected with the life of men in any or all occupations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Occupation (Vocation).]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by Harriett Faith against the Central Business Men's Association. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

George T. McDermott, of Topeka, Kan. (Ross J. Ream, of Kansas City, Mo., and Stone, McDermott, Webb & Johnson, of Topeka, Kan:, on the brief), for plaintiff in error.

C. A. Smart, of Lawrence, Kan. (McFadden & Claflin, of Kansas City, Kan., on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. On November 30, 1921, plaintiff in error, an Illinois corporation, issued to Robert A. Faith, then about 22 years old, its accident insurance policy, having received his written application therefor. In his application he named defendant in error, his mother, as beneficiary and the policy was so issued. He stated that he was an employé of the City Plumbing Company of Lawrence, Kansas, and in answer to this question in the application: "What is your occupation and what are all of your duties connected therewith?" he replied: "Store & counter duties only." The policy declared that the insurer "does hereby insure Robert A. Faith, of City of Lawrence, State of Kansas, by occupation a clerk, under Class A, against loss resulting solely from bodily injuries effected * * * through accidental means." It provides for the payment of indemnities by the insurer for loss of life, limb, etc., naming $5,000 as the amount to be paid in case of death; and contains this paragraph:

"This policy includes the endorsements, and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Association's classification of risks and premium rates in the event that the Insured is injured after having changed his occupation to one classified by the Association as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Association will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate, but within the limit so fixed by the Association for such more hazardous occupation."

A copy of Faith's application for the policy was attached to it, and by reference made a part of the contract of insurance. In this form it was delivered to Faith when issued.

The insured was fatally injured on June 5, 1922, while pleasure riding in an automobile, and the beneficiary, after making proof of loss brought this action and recovered judgment on the policy for $5,000. The answer of plaintiff in error, defendant below, alleged that insured, after issuance of the policy changed his occupation to that of an employé in a garage, that said occupation is classified in the Association classification above referred to as a Class D occupation, and that the premium paid by said Faith would have purchased $1,000 of insurance in Class D; it admitted liability for $1,000, alleged a tender of that amount and asked the court to enter judgment against it for $1,000 in full satisfaction of the beneficiary's claim.

The only controversy at the trial, and the only issue of fact submitted to the jury by the court, was whether insured had changed his occupation after the policy issued, to one that was classified as more hazardous than that named in the policy.

After death of the insured the beneficiary made proof of her claim, wherein she stated that insured was employed by C. W. Smith, Ford Agency and Service, that his average weekly salary was $15, that his occupation at time of his death was assembler and auto repair man, that all of his duties connected therewith were to "assemble car and repair," and that he was regularly employed by C. W. Smith. It further appeared in testimony that his employment by the City Plumbing Company terminated in January, 1922, and in March, 1922, he was employed by C. W. Smith, who carried on a Ford automobile agency at Lawrence, and he continued in Smith's employ until he was fatally injured. C. W. Smith's place of business had a frontage of about 50 feet, the front part was used as an office and show room, back of that are racks where parts for Ford automobiles are kept, back of the racks was the machine shop where mechanics worked on Ford cars, half of the room being used as a repair shop and the other half for the assemblage of cars. A representative of the insurer familiar with its classification of risks on file with the Superintendent of Insurance of Kansas testified that all merchants or clerks are classified under Class A if their duties are store duties only, and that

under that classification is this: "Plumber's supplies, office and selling duties and in store only." He further testified that a laborer in assembling of automobiles is classified under Class D, and other automobile workmen are classified as follows: "Electrician, car work only, Class C; Floor man, not repairing or testing, Class B; Foreman in shop, Class D; Machinist, Class D; Oiler of car, Class D; Tire adjuster, Class D; Washer, Class D; Worker or laborer not otherwise classified, Class E"; that the insurer issued the same contract to Class E and Class D, that is, a given premium would purchase the same amount of insurance in either D or E. The facts that have been stated were not denied. Two employés of C. W. Smith were called as witnesses by the insurer. One of them testified that Faith was a roustabout around the establishment, he swept the floor, hauled junk, worked around that way, and once in a while assembled cars; he was not a regular mechanic, he did not handle machines, he just set up the cars, put on the fenders, hauled junk, hauled freight and things like that. When new Fords are delivered the wheels are off, the fenders are off and the body is off. The body and wheels are put on at the railway station, and the fenders at the shop. Faith helped put on fenders and tightened up the nuts, swept the floor, cleaned up the shop and opened up crates when stuff came in. The other employé testified that Faith worked at the Smith plant from March until in June of 1922, and was working there during the week of his death, that he was classed in the shop department and stayed back in the shop most of the time, although he swept in the front part.

[1-3] Plaintiff below was then permitted over objection to prove by a member of the firm of the City Plumbing Company that it let Faith out of its employ in January because they had no further work for him at that time, that they told him they would call him back just as quick as they had work, that they saw him from time to time thereafter, and on the morning of the day of the injury the witness told Faith he could come back the following Monday and Faith agreed to come back at that time. The witness was further permitted to testify over objection what plumbers generally understood was meant by "store duties" in a plumbing establishment, that in addition to selling materials over the counter one discharging "store duties" should cut threads on pipe, repair little motors, curling irons and other electrical appliances, and in any way generally to assist about the shop and store, load and unload plumber's supplies, go out and fix motors and do wiring outside of the store building itself. Over objection another witness who qualified as a plumber was permitted to testify as to his understanding among plumbers of the meaning of "store duties," that those duties included sweeping out in the morning, the doing of any odd jobs that come to the shop, loading and unloading freight, making pipe repairs, in fact anything a good, live, industrious boy can turn his hand to. A partner of C. W. Smith was permitted to testify, over objection, that Faith worked at the garage intermittently during the spring of 1922 and was called as he was needed, that he uncrated parts for the office and put the parts on the racks, he swept the floors and did miscellaneous odd jobs, that he helped put on the wheels and fenders and other parts of the car, he would jack up cars and oil new cars, and did incidental jobs not required of a mechanic, he was employed as a laborer and was a roustabout. The effect of this testimony as to what Faith was expected to do while with the City Plumbing Co. and what he actually did while with C. W. Smith, if not its intended purpose, was to cause the jury to believe that the duties of Faith and the work which he did while in the employ of C. W. Smith were not more hazardous than the work he was expected to do while in the employ of the City Plumbing Co.; and we think there can be no doubt that it was incompetent and prejudicial. The insured was not injured while he was in the employ of the City Plumbing Co., and expert opinion as to the extent of his duties while he was in that occupation was entirely irrelevant. Whether the employment with C. W. Smith was in fact more hazardous or less hazardous than the employment with the City Plumbing Co. was not an issue in the case. That was not the contract. When the policy was issued the occupation and duties of Faith stated in the policy and application, made him a Class A risk under the insurer's classification, and that contract provided that in event the insured should be injured after having changed his occupation to one classified by the Association as more hazardous than that stated in the policy, then the Association would pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate for such more hazardous occupation. The policy stated that he was insured under Class A, and the issue was whether there had been a change in occupation by Faith

to one classified by the Association as more hazardous than that stated in the policy—not whether the new occupation was, in the opinion of the jury, in fact more hazardous. Tobin v. National Casualty Co., 63 Cal. App. 578, 219 P. 482. In that respect the terms of the contract are plain beyond doubt or quibble; and the facts conclusively show that Faith did change his occupation to one classified by the Association as more hazardous than that stated in the policy. Clearly, his employment with the City Plumbing Co. terminated in January, 1922, and his old duties with it were never resumed. In March he was employed by C. W. Smith at his garage. He worked at that garage for wages up to the time he received the fatal injury, and he had no other occupation during the time he was employed there. While in that occupation he was called on to discharge and did discharge the usual duties of an employé at such place, except the handling of machines in making repairs in the shop. He was not a machinist. He appears to have done everything else but that. He was classed in the shop department and stayed in the shop most of the time. At times he helped to assemble cars. He set them up, put on fenders, tightened up the nuts, put on wheels and other parts of the car, jacked up cars and oiled new cars, and hauled junk and freight. He did not do these things casually or incidentally, he did them under employment for wages and they constituted his occupation, his principal business or pursuit from some time in March up to the time he was injured on June 5th. There is, in our judgment, no room to doubt that he changed his occupation when he took employment at C. W. Smith's garage to one classified by the Association (Class D or E) as more hazardous than that stated in the policy, and there is no evidence to support a contrary finding. Faith's intention to return to the employ of the City Plumbing Company at a future day was negligible. If he had remained with that company he would have changed his occupation to one classified by the Association as more hazardous than that stated in the policy, had he discharged the same duties for it that he discharged for C. W. Smith. Nor does the principle, seemingly relied on, that one who has a fixed calling or profession, and so insured, does not change his occupation by temporarily and casually doing things not in line with his professional calling, apply. The insured was a young man. It does not appear what he did before he was employed by the City Plumbing Company, nor that he

had been in any business as a fixed occupation, nor did he so represent in his application, nor was he so insured as a risk. Counsel for insurer asked the court to instruct the jury, on the subject of change of occupation:

"That the term 'occupation' as employed in the policy implies simply that which at the time of the accident giving the cause of action constitutes the assured's principal business or pursuit; that which engaged his attention and time as distinguished from that which is incidentally connected with the life of men in any or all occupations."

This request announced a correct principle of law, so declared by this court in Ætna Life Ins. Co. v. Dunn, 138 F. 629, 71 C. C. A. 79, and should have been given. It was refused and an exception saved. In his application Dunn gave his occupation as a druggist and was so insured. The policy issued to him thereon provided that if Dunn was injured in any occupation classified by the company higher than the premium paid for the issued policy covers, then the indemnity should be only such amount as the premium would purchase at the rate fixed for the increased hazard. Dunn's drug store was destroyed by fire. He then went upon a farm and for eight months gave his principal attention to superintending it, and while so engaged was fatally injured. Classified by the insurer as a farmer, his beneficiary was entitled to recover $2,500, which the insurer conceded; classified as a druggist, the beneficiary was entitled to recover $5,000, for which amount judgment was given. This was held error, and that the jury should have been directed to return a verdict for the lesser sum. During the eight months in which Dunn was out of the drug business and upon the farm he had the intention of returning to the occupation of a druggist. This court said:

"So that if, at the time Dr. Dunn made his application for and took out his policy of insurance, he had been regularly engaged in supervising a farm, which occupied most of his time and his attention, and he received his injury while engaged therein, he would not have been entitled to recover the full amount of the select policy as a druggist."

And it was held that his intention to return to the drug business did not constitute him a druggist and was an immaterial fact. In Standard Life & Accident Insurance Co. v. Carroll, 86 F. 567, 30 C. C. A. 253, 41 L. R. A. 194, the policy described the insured "by occupation a passenger conducter" and provided:

"If the insured be injured in any occupation or exposure classified by this company as more hazardous than that stated in said application [passenger conductor], the * * * indemnity shall be only for such sum as the premium paid will purchase at the rate fixed by said company for such increased hazard."

The injury occurred while insured was acting as conductor of a mixed railway train, and the company's classification of risks and premiums of insurance put the occupation of conductor of a mixed train in a class as more hazardous than that of passenger conductor. It was held that the amount of recovery was limited to the class classified by the insurer as more hazardous. In Stewart v. Massachusetts Accident Co., 96 Conn. 561, 114 A. 657, the insured gave his occupation as that of an oyster opener and was insured as such. He continued in that service during the season, and during prior seasons, but when the seasons closed he engaged in other work. He was injured after the oyster season had closed, while engaged in a more hazardous occupation, so classified by the insurer. The policy contained in substance the same clause that has been quoted from the policy issued to Faith. It was contended that the insured had never given up the business of oyster opener and therefore he had not changed his occupation. The court said:

"The fallacy in the plaintiff's claim lies in not recognizing that a man may have and work at different occupations at different times without permanently relinquishing any one of them. * * * It was the duty of the court to have instructed the jury that the facts disclosed that the deceased was working at an occupation classified as more dangerous. * * * Where the amount of insurance and the rates depend upon the kind of work one is engaged in, the rights of the claimant are based upon the actual facts as to what the person was doing, what his occupation was at the time that he was injured, and not upon whether he, when the season came around, intended to resume some other and more favored occupation which from its seasonal character he has been forced to relinquish for a part of the year. The policy does not provide for or recognize temporary changes, but calls for the occupation in fact. And here the plaintiff's evidence shows without question that the deceased in fact was regularly employed as a laborer at the time of his death, and that his occupation was then that of a laborer, and by the terms of the policy the rights of the claimant became limited to the indemnity payable for the occupation in which he was engaged. There was nothing properly to leave to the jury upon the unquestioned fact and under the terms of the policy."

See, also, Beane v. Continental Casualty Co., 106 Miss. 813, 64 So. 732; Continental Casualty Co. v. Hawkins, 157 Ark. 342, 248 S. W. 553; Estabrooks' Case, 74 Vt. 473, 52 A. 1048, 93 Am. St. Rep. 916; Loesch v. Union Casualty & Surety Co., 176 Mo. 654, 75 S. W. 621.

Reversed and remanded.