[No. 25646. Department One. August 10, 1935.]

MAE HOWARD, *as Administratrix, Respondent,* v.
GORDON S. HOLLAHAN *et al., Defendants,* COM-
MERCIAL CASUALTY COMPANY, *Appellant.*[1]

*Ryan, Askren & Ryan,* for appellants.

*Snively & Bounds,* for respondent.

TOLMAN, J.—As this case is now presented in this
court, it is an action to recover upon an employer's
liability insurance policy. After trial to the court,
plaintiff recovered a judgment against the corporate
defendant, and it alone has appealed.

The policy in question, in effect, provides that the in-
surer will indemnify the assured against loss and ex-
pense by reason of liability imposed by law upon the

[1] Reported in 48 P. (2d) 230.

assured for damages on account of bodily injuries and death accidentally suffered by an employee or employees of the assured by reason of the business carried on by the assured as fruit growers, and specifically covers "farm labor—orchards & vineyards—cultivation work—including tree pruning & spraying, fruit packing," and the like.

The only question here presented is the interpretation of the rider attached to the policy, which rider is entitled "Voluntary Compensation Endorsement," and in which the following language appears:

"In consideration of the premium provided for in the Policy, the Company hereby agrees to voluntarily pay to employees injured in the course of their employment and covered by said Policy, or to their dependents in fatal cases, such amounts as would be payable according to the Washington Workmen's Compensation Law, including the cost of such medical, surgical and hospital treatment as is provided in said law, even though such persons may not have a legal claim under said Compensation Law against this employer;"

Admittedly, the deceased husband of the respondent was an employee of the assured and, as such, was engaged, while the policy was in force, in spraying operations, thus being brought in close contact with poisonous spraying material which caused his illness and death.

Appellant argues that since, by the Washington workmen's compensation act (Rem. Rev. Stat., § 7675 [P. C. § 3470]), the word "injury" as used in that act is defined as "a sudden and tangible happening, of a traumatic nature," necessarily the language of the rider means that the insurer will compensate only for such traumatic injuries, or, in other words, for those injuries for which compensation would be paid under the workmen's compensation act.

The respondent contends and the trial court held

that a fair construction of the language employed makes the compensation law the measure of the amount to be paid, and not at all the definition of the kind of injury for which payment will be made.

█ The trial court stated his views in language which we cannot hope to improve upon as follows:

"The policy does not say that the endorsement shall apply to employees injured as the word 'injury' is defined by the Workmen's Compensation Act. The court is of the view that it is broader than the Workmen's Compensation Act. The act limits liability to classes of cases where trauma is present. It is not stated in the rider that the company is going to pay for injuries as defined by the Workmen's Compensation Act. The word 'injury' is not limited or restricted in any way. It is not defined. To the court's mind the only purpose of the language 'such amounts as would be payable according to the Workmen's Compensation Law' is to determine the amount which the company will pay if there is a liability, and not to determine the type of injury as arbitrarily defined by the statute *supra*. The court is of the opinion that the only logical construction to be placed upon the words used in the contract is to the effect that it was intended to cover all injuries, as that term is usually understood and as defined by the cases herein referred to."

The subject of injury and the question of the amounts to be paid are both covered in the one sentence of the rider, which we have quoted. The word "injured" is limited only by the words "in the course of their employment and covered by said policy." Then follows the subject of the amounts to be paid and the amount in each case is limited by the words "as would be payable according to the Workmen's Compensation Law." Clearly, by this language, the state compensation law is used as a limitation upon the amounts to be paid only, and violence would have to be done to the language used in order to establish a relationship between the word "injured" and the compensation

law. Had the intention been otherwise, it is obvious that the thought could have been made clear and plain by any one of a number of simple changes in the language used.

■ We agree with the appellant in his contention that the language used is not ambiguous. If it were, then, under the well-settled rule of law in such cases, the construction least favorable to the one who wrote the words would have to be applied. The rule is recognized in many of our cases. See *Green v. National Casualty Co.*, 87 Wash. 237, 151 Pac. 509, and *Samarzich v. Aetna Life Ins. Co.*, 180 Wash. 379, 40 P. (2d) 129.

As was said in the *Green* case, *supra*:

"But this rule should not be permitted to have the effect to make a plain agreement ambiguous and then interpret it in favor of the insured. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain and ordinary meaning."

So here, we take the language of the contract according to its ordinary meaning and from it hold, as did the trial court, that it is plain, clear and unambiguous, and nothing in the words used in any manner limit the meaning of the word "injured" to the definition used in the compensation act.

The judgment appealed from is affirmed.

BLAKE, MAIN, BEALS, and GERAGHTY, JJ., concur.